UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES C. SANDERSON,

    Plaintiff,

ST. LUKE'S CATARACT AND LASER
INSTITUTE, P.A.,

    Intervenor Plaintiff,

v.                                                              CASE NO: 8:09-cv-1755-T-23AEP

ZURICH AMERICAN INSURANCE
COMPANY, MARYLAND CASUALTY
COMPANY, and ASSURANCE
COMPANY OF AMERICA,

    Defendants.
_____/

**ORDER**

On August 26, 2009, after St. Luke's Cataract and Laser Institute, P.A., ("St. Luke's") twice sued the plaintiff James Sanderson and Sanderson LLC for a violation of St. Luke's intellectual property rights, Sanderson sued (Doc. 1) the defendants for breach of an insurance policy. The defendants moved (Doc. 11) to dismiss, and a December 11, 2009, order (Doc. 18) denies the motion. On December 31, 2009, St. Luke's moved (Doc. 23) to intervene as the assignee of Sanderson LLC's claim against the defendants. The complaint in intervention (Doc. 23-1) asserts two counts for breach of contract. The defendants move (Doc. 38) for summary judgment and argue that the plaintiffs' breach of contract claim "fails as a matter of law," because the policy excludes

"personal and advertising injury" attributable to the claims asserted by St. Luke's against Sanderson.  The plaintiffs respond (Doc. 47) in opposition.  At a December 1, 2010, hearing, the parties argued as to the application of an exclusion in the policy to St. Luke's copyright infringement and Digital Millennium Copyright Act claims.

The Undisputed Facts

*1. Background*

St. Luke's is a privately owned eye care clinic and ambulatory surgery center that employed Sanderson as an oculoplastic surgeon.[1]  In 1995, Sanderson established the St. Luke's oculoplastic surgery practice, St. Luke's Cosmetic Laser Center.[2]  Sanderson worked with St. Luke's web master, Mark Erickson, to create a web site containing (1) information about St. Luke's, (2) a description of Sanderson's education and training, (3) a description of the surgical procedures that Sanderson performs, (4) before and after photos of patients, (5) surgical videos, and (6) other information.[3]  Erickson registered the domain names "laserspecialist.com" and "lasereyelid.com" for St. Luke's.  The registration listed Sanderson as the registrant (located at St. Luke's address), and St. Luke's paid both the registration and internet hosting fees.[4]  Sanderson composed text for the web site and collaborated with Erickson in arranging the graphics and layout.  The web site contained on each page a copyright notice that stated "Copyright © [Year]

---

[1] (Docs. 38, 38-13, 47, 48)

[2] (Docs. 38, 38-13)

[3] (Docs. 38, 38-13, 47)

[4] (Doc. 38-13)

St. Luke's Cosmetic Laser Center, All Rights Reserved."[5]  St. Luke's also displayed on the upper left corner of each page a mark consisting of the name "laserspecialist.com" in blue and gold and a "swoosh" design to the right of the name.[6]

In 2003, Sanderson resigned from St. Luke's and opened an independent oculoplastic surgery practice, Sanderson LLC.[7]  Sanderson requested and Erickson approved a change in the administrative contact information for each domain name, and Sanderson obtained control of each domain name.  Sanderson moved each domain name to a new internet hosting company, and the former hosting company deleted the content of the web site.  Using a back-up copy of the web site, Sanderson re-launched the web site (with the new hosting company) using the laserspecialist.com and lasereyelid.com domain names.  Although Sanderson modified the web site (including the copyright disclaimer), the appearance of the re-launched web site was nearly identical to the appearance of the web site before Sanderson resigned from St. Luke's.[8]  Furthermore, because each domain name remained linked to the primary web site for St. Luke's, a visitor to St. Luke's web site could visit Sanderson's competing practice by clicking the laserspecialist.com link.[9]

---

[5] (Docs. 38, 38-13, 47, 38-24)

[6] (Docs. 38, 38-13, 47)

[7] (Docs. 38, 38-13, 38-24, 47)

[8] (Docs. 38-13, 47)

[9] (Doc. 38-13)

*2. Antecedent Litigation*

Upon discovering Sanderson's use of the domain names for Sanderson's competing practice, St. Luke's sued Sanderson in February, 2006 ("St. Luke's I").[10] St. Luke's alleged a claim for (1) false designation of origin in violation of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a) (the "Trademark Act"); (2) "cyberpiracy" in violation if Section 43(d) of the Trademark Act; (3) trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c); (4) copyright infringement in violation of the Copyright Act, 17 U.S.C. § 501, et seq.; (5) a violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1202(b) (the "DMCA"); (6) injury to business reputation in violation of Section 495.151, Florida Statutes; (7) deceptive and unfair trade practices in violation of Section 501.201, Florida Statutes; and (8) unfair competition, misappropriation, and conversion.[11] On the copyright infringement claim, St. Luke's sought approximately $57,012.00 as a reasonable royalty and between $2.1 and $2.8 million in revenue lost due to the infringement.[12]

---

[10] St. Luke's Cataract & Laser Institute, P.A. v. James C. Sanderson, No. 8:06-cv-223-T-24MSS. In January, 2006, St. Luke's registered a copyright for the 2003 version (as the site appeared before Sanderson's departure) of laserspecialist.com, and in August, 2006, St. Luke's registered the 2000 version of laserspecialist.com. (Doc. 38-13)

[11] (Doc. 38-10)

[12] (Doc. 47-1, pp. 189-92)

Sanderson sought coverage and a defense under each insurance policy issued to Sanderson by the defendants.[13] Each policy[14] provides coverage for "personal and advertising injury liability" and states:

> 1. Insuring Agreement
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.
>
> . . .
>
> 14. "Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one or more of the following offenses:
>
> a. False arrest, detention or imprisonment;
> b. Malicious prosecution;
> c. The wrongful eviction from, wrongful entry into, or invasion fo the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
> d. Publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> e. Publication, in any manner, of material that violates a person's right of privacy;
> f. Misappropriation of advertising ideas or style of doing business; or
> g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".
>
> . . .
>
> 2. Exclusions
>
> This insurance does not apply to:

---

[13] The defendants assert (Doc. 38) that the defendant Zurich American Insurance Company never issued a policy to Sanderson, and the plaintiffs dispute the assertion and state (Doc. 47) that the plaintiffs lack sufficient information to determine whether Zurich issued any of the policies.

[14] (Docs. 38-2, 38-3, 38-4, 38-5, 38-6, 38-7, 38-8)

- 5 -

> a. "Personal and advertising injury":
>
> . . .
>
> (12) Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights;
>
> However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan; or
>
> (13) Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

Each policy defines "Advertisement" as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." A "notice that is published" includes "material placed on the Internet or on similar electronic means of communication." The policy provides that if the notice is published on a web site, "only that part of a web[]site that is about your goods, products or services for the purpose of attracting customers or supporters is considered an advertisement." In response to his claim for coverage and his demand for a defense, Sanderson received from the defendant Assurance Company of America a letter (1) that discusses the policy period, coverage, and exclusions; (2) that both raises potential defenses and reserves the right to deny coverage; and (3) that assigns counsel to defend Sanderson.[15]

After a jury trial, the clerk entered a judgment in favor of St. Luke's and against Sanderson on each claim except the claims for copyright infringement, trademark dilution, and injury to business reputation.[16] Both the trademark dilution and injury to

---

[15] (Doc. 38-18)

[16] (Doc. 38-12)

business reputation claims were dismissed at trial.[17] Although the jury found that Sanderson infringed a copyright belonging to St. Luke's, the jury found that each copyright registration was invalid.[18] Both Sanderson and St. Luke's appealed. The Eleventh Circuit Court of Appeals affirmed the judgment as to each count and re-instated the damages awarded on count two. St. Luke's Cataract & Laser Institute, P.A. v. Sanderson, 573 F.3d 1186 (11th Cir. 2009). Both St. Luke's and Sanderson received an award of attorney's fees in accord with the judgment.

Subsequently, Sanderson received from the defendants correspondence that states (1) that, as to each claim (except for the copyright claim), the policies provide no coverage; (2) that, as to the copyright claim, copyright infringement in Sanderson's "advertisement" is a covered offense, "subject to the potential application of Exclusion [thirteen] and all other policy exclusions"; and (3) that, because Sanderson received a favorable verdict on the copyright claim, "at the present time there are no coverage issues."[19] In February, 2008, St. Luke's filed a revised copyright registration and sued again ("St. Luke's II") in an attempt to recover on the claim.[20] The defendants again stated that the defendants would provide a defense to Sanderson, but the defendants reserved the right to withdraw from the defense if the defendants determined that the

---

[17] (Docs. 38, 38-12)

[18] (Doc. 48-2)

[19] (Doc. 38-20)

[20] St. Luke's Cataract & Laser Institute. P.A. v. James C. Sanderson, No. 8:08-cv-416-T-24TGW; (Docs. 38, 47).

policies provided no coverage for the claim.[21]  In August, 2009, Sanderson discharged counsel provided by the defendants and obtained substitute counsel.[22]  Faced with the res judicata effect of the finding of copyright infringement in St. Luke's I and concerned about St. Luke's proving extensive damage,[23] Sanderson attempted to mediate the claim in St. Luke's II and requested that the defendants attend mediation.  Notwithstanding the defendants' declining to settle the claim, Sanderson entered a joint stipulation with St. Luke's resolving both the judgment in St. Luke's I and the copyright infringement claim in St. Luke's II in exchange for a $2.4 million amended final judgment against Sanderson and Sanderson LLC.[24]

In this action,[25] Sanderson and St. Luke's (as the assignee of Sanderson LLC's claim) sue the defendants for breach of contract based on the defendants' alleged (1) wrongful denial of coverage and failure to indemnify, (2) failure to provide "mutually agreeable" counsel, (3) failure to settle each claim by St. Luke's, (4) failure to pay each judgment against Sanderson resulting from St. Luke's I, and (5) failure to post a supersedeas bond pending appeal of St. Luke's I.

## Discussion

In moving for summary judgment, the defendants argue that the policy excludes "personal and advertising injury" arising from the claims in both St. Luke's I and St.

---

[21] (Doc. 38-21)

[22] (Doc. 38-22)

[23] (Doc. 48)

[24] (Doc. 38-23)

[25] (Doc. 1)

- 8 -

Luke's II (1) because each claim by St. Luke's "arises out of" trademark infringement and falls under the exclusion for trademark infringement ("exclusion twelve") and (2) because, even if a claim falls outside the trademark exclusion, the "unauthorized use" exclusion ("exclusion thirteen") eliminates coverage for each claim. The defendants argue that because no coverage exists the defendants possessed a duty neither to appoint "mutually agreeable counsel," nor to settle, nor to indemnify, nor to post a supersedeas bond. In response, the plaintiffs argue (1) that the copyright and DMCA claims fall within the policies' coverage and outside exclusions twelve and thirteen and (2) that material issues of fact exist as to both coverage of certain claims (such as the unfair competition claim) and as to the defendants' "ability to raise . . . exclusions as to Dr. Sanderson."[26]

*1. Coverage of the Copyright Infringement and DMCA Claims*

Exclusion twelve precludes coverage for a personal or advertising injury "[a]rising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights." However, the exclusion "does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan." Exclusion thirteen precludes coverage for damages awarded as a result of a claim "[a]rising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers."

---

[26] An insured possesses a limited ability to create or extend insurance coverage based on the conduct of the insurer. For example, an insured cannot assert equitable estoppel "to create or extend coverage" but may assert estoppel "defensively to prevent a forfeiture of insurance coverage." Crown Life Ins. Co. v. McBride, 517 So. 2d 660 (Fla. 1987). A narrow exception exists for promissory estoppel, which "may be utilized to create insurance coverage where to refuse to do so would sanction fraud or other injustice." 517 So. 2d at 661-62. Neither complaint contains an allegation pertinent to promissory estoppel.

- 9 -

The defendants assert that exclusion twelve's exception for an "advertisement" is inapplicable to the copyright infringement claim (1) "because the underlying suits do not actually assert separate injuries arising from 'copyright infringement'" and (2) because "the exception to the policies' intellectual property exclusion would only apply in the event that St. Luke's had actually alleged Sanderson's infringement of St. Luke's 'copyright' in that web[]site."  Thus, the defendants argue that St. Luke's asserted no distinct claim of infringement of a copyright owned by St. Luke's.  In opposition, the plaintiffs assert (1) that the web site "was 'a notice that is broadcast or published to the general public or specific market segments about [Sanderson's] goods, products or services for the purpose of attracting customers or supporters,' and the entirety of the [w]eb[]site related to Dr. Sanderson's services for the purpose of attracting patients"; (2) that the copyright infringement and DMCA claims "are wholly independent from the trademark infringement claim"; and (3) that St. Luke's alleged in the copyright infringement claim both that the web site was an original, expressive work subject to copyright protection and that St. Luke's was the owner "of all right title[,] and interest in and to the copyrights of the [w]eb[]site."

In both St. Luke's I and St. Luke's II, St. Luke's alleged a claim for copyright infringement, which claim stated that St. Luke's "is the owner of all right, title, and interest in and to the copyrights for its Laser Specialist Site."[27]  St. Luke's alleged that Sanderson copied the web site without authorization from St. Luke's.  Additionally, St. Luke's alleged a violation of the DMCA in St. Luke's I based on Sanderson's removing

---

[27] (Docs. 38-10, 38-11)

the notice of copyright and both copying and distributing the copyrighted web sites. Sanderson's copyright infringement undoubtedly occurred in his "advertisement"—through a web site available to the general public—for the purpose of announcing his services and attracting customers. Therefore, although the DMCA and copyright infringement claims in St. Luke's I and in St. Luke's II warrant exclusion under the first paragraph of exclusion twelve—because the claims arise out of the infringement of copyright, trademark, or other intellectual property rights—the exception for copyright infringement in an advertisement applies, and exclusion twelve precludes coverage of neither claim.

Exclusion thirteen, however, excludes (without exception) personal and advertising injury "arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers." The defendant argues (1) that "another's name" includes the domain names (laserspecialist.com and lasereyelid.com) that St. Luke's registered and used to market the cosmetic surgery practice; (2) that, even if "another's name" excludes St. Luke's domain names, Sanderson's unauthorized use of laserspecialist.com in Sanderson's domain name and web site qualifies as a "similar deceptive marketing tactic" to mislead St. Luke's potential customers; (3) that the copyright and DMCA claims arise from and amount to a constituent element of Sanderson's overall scheme to mislead customers by appropriating and using without authorization St. Luke's domain name; and (4) that the purpose of the exclusion is to preclude coverage for cyberpiracy and "other online diversion tactics" such as

Sanderson's.  In response, the plaintiffs argue (1) that the copyright infringement claim in both St. Luke's I and II focused on infringement in the web site content and relied neither on an allegation nor on evidence of Sanderson's misleading or diverting customers; (2) that the copyright infringement claim was the most important of St. Luke's claims and not merely a constituent element of a larger claim based on Sanderson's misleading customers; (3) that St. Luke's sought no damages related to misleading or misdirecting patients in St. Luke's copyright infringement claim; (4) that the DMCA claim arises "exclusively [from] the unauthorized removal of St. Luke's copyright notices from the pages on the [w]eb[]site"; and (5) that exclusion thirteen precludes coverage for neither the copyright infringement nor the DMCA claim because neither claim possesses any connection to the unauthorized use of St. Luke's name in an e-mail address, domain name, or metatag.

Exclusion thirteen applies to "personal and advertising injury" "arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers."  As the defendants argue, "another's name" conceivably includes both a name that identifies another—e.g., St. Luke's Cataract and Laser Institute, VeryBig Capital Corp., or John Jones—and a name that belongs to another, such as laserspecialist.com or VeryBig's "Reliable" appliances.  The insurance policy defines neither "name" nor "another's name."  However, in the commercial general liability section, the policy uses "name" in the definition of "your product" to include products sold by others trading under "your name."  Just as exclusion thirteen provides relatively little evidence as to the scope of

the word "name," the definition of "your product" fails to elucidate the breadth of "your name." Nonetheless, the definition provides an opportunity for a helpful illustration. Applying (for example) the defendants' construction of "another's name" to the term "your name," the definition of "your product" would logically include products sold by others under both the name VeryBig Capital Corp. and the name Reliable. Under this construction, "name" (whether one's own name or another's name) includes both an identifying name—such as a corporate name—and a name belonging to (i.e., the property of) a corporation—such as a trademark-protected domain name or product name. In other words, the phrase "John Jones's name" includes both his proper name—John Jones—and "Jonesey's Burgers," a trademark owned by John Jones. In this instance, however, exclusion thirteen's use of both "name" and "domain name" arguably evidences that, as the words appear in the policy, a "domain name" is not within the scope of "another's name." <u>Nonetheless, whether "another's name" is construed broadly or narrowly, the exclusion from coverage of damages arising from "other similar tactics" undoubtedly brings within the exclusion the unauthorized use of another's domain name, which may not constitute the corporate or proper name of another but certainly constitutes both a name belonging to another and an "other similar tactic," i.e., the tactic of unauthorized use of another's domain name is a tactic similar to the tactic of unauthorized use of another's corporate or proper name.</u>

    St. Luke's sued Sanderson for Sanderson's unauthorized use of laserspecialist.com in Sanderson's domain name and on Sanderson's competing web site. Exclusion thirteen precludes coverage for "personal and advertising injury" arising

out of Sanderson's unauthorized use of St. Luke's domain name to mislead potential St. Luke's customers.  Both the underlying lawsuits and the opinion of the Eleventh Circuit Court of Appeals confirm that the entire controversy between Sanderson and St. Luke's arose from Sanderson's use of laserspecialist.com in his competing practice's domain name—and Sanderson's concomitant copying and use of St. Luke's web site content—to mislead potential St. Luke's customers and to generate business for his new, solo practice.  Although (as the plaintiffs argue) in some instances, "stealing a design is just stealing a design without trying to mislead as to identity,"[28] the conduct that instigated St. Luke's I and St. Luke's II was significantly more than just stealing a design.  As Judge Hull aptly summarizes:

> Here, the likelihood of confusion was clear. . . . Dr. Sanderson used the same LaserSpecialist.com name, the same website, and the same logo in the same manner, in basically the same format, for the same geographical market to target the same customers for the same services previously provided at St. Luke's.  Dr. Sanderson merely removed the references to St. Luke's, changed the contact information, and relaunched the LaserSpecialist.com website for his own promotion.

St. Luke's, 573 F.3d 1186, 1209-10 (11th Cir. 2009) (Hull, J.).  In other words, Sanderson's use of laserspecialist.com (and consequent violation of both St. Luke's copyright and the DMCA) arises from Sanderson's mischievous scheme to mislead and divert potential St. Luke's customers, a scheme for which Sanderson agreed to pay $2.4 million in damages for economic loss to St. Luke's.  Sanderson appropriated the laserspecialist.com domain name (which maintained a link to St. Luke's primary web site), used the name to mislead and attract customers, and removed St. Luke's

---

[28] AMCO Ins. Co. v. Lauren-Spencer, Inc., 500 F. Supp. 2d 721, 734-35 (S.D. Ohio 2007).

- 14 -

copyright notice from the web site to complete the ruse. Exclusion thirteen undoubtedly precludes coverage of St. Luke's copyright infringement claim and DMCA claim, each of which arises from Sanderson's unauthorized use of the St. Luke's domain name to mislead (with notable success)[29] potential St. Luke's customers.

*2. Coverage of the Trademark Infringement and Other Claims*

The defendants argue that each claim by St. Luke's "arises out of" trademark infringement and, thus, that exclusion twelve precludes coverage. In addition to the copyright infringement and DMCA claims, the claims by St. Luke's include (1) trademark infringement, (2) cyberpiracy, (3) conversion, (4) deceptive and unfair trade practices, and (5) unfair competition. The plaintiffs acknowledge that the claims for trademark infringement and cyperpiracy "appear to be subject to exclusions under the [i]nsurance [p]olicies" but the plaintiffs argue that the defendants "failed to establish [that] there are no genuine issues of material fact regarding the other claims . . . including, but not limited to, St. Luke's claim for unfair competition."

In St. Luke's I, the jury determined that Sanderson (1) infringed the St. Luke's "laserspecialist.com" trademark and (2) committed cyberpiracy through his use and registration of the domain names.[30] Each claim is predicated upon the bad faith,

---

[29] See Sanderson, 573 F.3d at 1197 (finding that "[t]he evidence also showed that revenues from Dr. Sanderson's solo practice decreased substantially in 2006 after he took down the LaserSpecialist.com website that he launched in October 2003.").

[30] Section 43(a) of the Lanham Act permits an action against any person:

> who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(continued...)

- 15 -

deceptive, or misleading use of a registered trademark.  Exclusion twelve's preclusion of a claim arising from trademark infringement undoubtedly excludes from coverage each claim and provides no applicable exception.  The same is true for both the deceptive and unfair practices and the unfair competition claims.  "The legal standard for federal trademark and unfair competition and for common law trademark infringement are essentially the same. To prevail on . . . unfair competition claims under Florida common law, [the plaintiff] must show 'deceptive or fraudulent conduct of a competitor and likelihood of consumer confusion.'"  Monsanto Co. v. Campuzano, 206 F. Supp. 2d 1239, 1250 (S.D. Fla. 2002) (citations omitted).  Thus, each claim that consists of the same elements as a trademark infringement claim falls comfortably within exclusion twelve's "arising out of" language.  Furthermore, St. Luke's claim for conversion (for which the jury in St. Luke's I awarded no damages) inarguably falls under exclusion twelve, because the claim arises from both St. Luke's copyright and trademark ownership and Sanderson's infringement.

---

[30](...continued)
    (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

    (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . . .

15 U.S.C. § 1125(a).  Section 43(d) permits an action for cyberpiracy based on a person's bad faith, intentional use of a protected mark in the registering, trafficking, or using of a domain name.  15 U.S.C. § 1125(d).

### Conclusion

Accordingly, because the policy excludes damages arising from the claims asserted in both St. Luke's I and St. Luke's II, the defendants' motion for summary judgment (Doc. 38) is **GRANTED**.  The Clerk is directed to (1) enter a judgment in favor of the defendantsand against the plaintiffs, (2) terminate any pending motion, and (3) close the case.

ORDERED in Tampa, Florida, on December 6, 2010.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE