# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

JAMES C. SANDERSON and
ST. LUKE'S CATARACT AND
LASER INSTITUTE, P.A.,

      Plaintiffs,

v                                           Case No. 8:09-CV-1755-T-23AEP

ZURICH AMERICAN INSURANCE
COMPANY, MARYLAND CASUALTY
COMPANY and ASSURANCE COMPANY
OF AMERICA

      Defendants

_____/

## PLAINTIFFS' TRIAL BRIEF

Plaintiffs, James C. Sanderson ("Dr. Sanderson") and St. Luke's Cataract and

Laser Institute, P.A. ("St. Luke's), hereby file this Trial Brief.

## INTRODUCTION

This is a breach of contract action against Defendants for breach of their

insurance contract with Dr. Sanderson arising out of litigation initiated by St. Luke's

against Dr. Sanderson and his medical practice, James C. Sanderson, M.D., LLC

("Sanderson LLC").  Defendants issued insurance policies to Dr. Sanderson that included

coverage for "Personal and Advertising Injury." (the "Insurance Policies").[1]  [Dkt. 38,

---

[1] Defendants have asserted that the applicable policies were either issued by Assurance or Maryland, and that Zurich never issued an insurance policy to Dr. Sanderson.  However, each of the Insurance Policies (Dkt. 38, Exhibits 2-8) include Zurich's name throughout the policy, including on the first page, and say that claims should be made to the company issuing the policy at "Zurich Small Business."  Plaintiffs have only taken a partial corporate representative deposition, and accordingly, have been unable to determine what role, if any, Zurich has in connection with the applicable insurance policies.

Exhibits 2-8]   The Insurance Policies provide coverage to Dr. Sanderson for claims brought by St. Luke's against Dr. Sanderson in Case No. 8:06-cv-00223 and Case No. 8:08-cv-00416, United States District Court, Middle District of Florida.  St. Luke's is a third party beneficiary of the Insurance Policies.

Defendants breached the Insurance Policies by: (a) wrongfully denying coverage and failing to indemnify Dr. Sanderson; (b) failing to provide mutually agreeable counsel; (c) failing to settle the claims against Dr. Sanderson; (d) failing to pay judgments against Dr. Sanderson; and (e) failing to post a supersedeas bond.

## BACKGROUND

Dr. Sanderson was employed by St. Luke's as an oculoplastic surgeon.  (Dkt. 48, ¶ 2).  Dr. Sanderson, while employed by St. Luke's, created a website (the "Website") that contained information about St. Luke's, Dr. Sanderson and his practice. (Dkt. 38, Exhibit 12, pp. 5-6).  In June 2003, Dr. Sanderson resigned his position with St. Luke's and opened a practice through Sanderson LLC.  (Dkt. 38, Exhibit 12, p. 8).  Thereafter, Dr. Sanderson relaunched the Website, which was virtually identical to the content of the site before Dr. Sanderson left St. Luke's.  (Dkt. 38, Exhibit 12, p. 9).

After St. Luke's discovered that Dr. Sanderson relaunched the Website, it initiated litigation.  (Case No. 8:06-cv-00223, United States District Court, Middle District of Florida, hereafter "St. Luke's I").  In its Amended Complaint, St. Luke's brought claims against Dr. Sanderson for, among other things, copyright infringement and violation of the Digital Millennium Copyright Act ("DMCA").  (Dkt. 38, Exhibit 9).  Dr. Sanderson argued that he was not liable because he was owned the Website.  (Dkt. 48, ¶ 5).

2

Prior to initiating St. Luke's I, St. Luke's registered its copyright in the Website to permit it to bring its copyright infringement claim pursuant to 17 U.S.C. § 411(a).  (Dkt. 47, Exhibit A, pp. 175-176; Dkt. 38, Exhibit 12, pp. 12-13).   However, St. Luke's inadvertently included some material that was not subject to its copyright with the registration.  (Dkt. 47, Exhibit A, p. 177; Dkt. 38, Exhibit 12, pp. 13-14).  Although St. Luke's subsequently filed a second copyright registration to attempt correct the errors in the original registration, Dr. Sanderson and Sanderson LLC argued that St. Luke's did not have a valid copyright registration.  (Dkt. 38, Exhibit 23, p. 9).

Defendants issued various Insurance Policies to Dr. Sanderson.  (Dkt. 38, Exhibits 2-8).  As the Eleventh Circuit recently ruled, the Insurance Policies provide coverage for St. Luke's claims against Dr. Sanderson for copyright infringement and violation of the DMCA.  *St. Luke's Cataract & Laser Institute, P.A. v. Zurich American Ins. Co.*, 506 Fed. Appx. 970, 975 (11th Cir. 2013)   After St. Luke's I was filed, Dr. Sanderson retained, and paid for, his own counsel (Larson & Larson in Pinellas County), put Defendants on notice of the claims, and sought coverage pursuant to the Insurance Policies.  (Sanderson Declaration, ¶¶ 3, 4).

On October 24, 2006, Assurance sent Dr. Sanderson a letter acknowledging receipt of the claim, discussing coverage and exclusions under the Insurance Policies, and raising potential coverage defenses.  (Dkt. 38, Exhibit 17).  Defendants sent at least one additional letter during the pendency of St. Luke's I, raising various coverage defenses and exclusions.  (Dkt. 38, Exhibit 18).  Although Defendants agreed to defend subject to a reservation of rights, they advised Dr. Sanderson that they would not pay for Larson &

Larson, employed a Chicago law firm (Lowis & Gellen) to represent Sanderson and Sanderson LLC, and did not advise Dr. Sanderson that he had a right to mutually agreeable counsel.  (Dkt. 115, ¶ 5).

The copyright infringement claim was St. Luke's most significant claim at trial, with expert testimony placing damages at $2,100,000 to over $2,800,000.  Indeed, as St. Luke's counsel stated in his closing argument, "the first claim and the most important claim is the copyright notice claim."  (Dkt. 47, Exhibit A, p. 175, ll. 1-2).  During closing argument, St. Luke's counsel argued that the damages associated with the copyright claim were royalties of approximately $57,012, plus somewhere between $2,100,000 and $2,800,000 for revenues generated as a result of the copyright infringement claim.  (Dkt. 47, Exhibit A, pp. 189-192).

Defendants sent an adjuster, William Losen, to attend trial on their behalf.  (Dkt. 146-2, ¶ 3).  Mr. Losen was present for almost the entire trial and spoke to St. Luke's representatives regularly.  (Dkt. 146-2, ¶ 3).  At the conclusion of the trial, Mr. Losen advised St. Luke's administrator, J. Bradley Houser, that Defendants authorized him to offer $417,652 in full settlement of all claims.  (Dkt. 146-2, ¶ 3).  Although this was the first six figure offer St. Luke's received in the case, it was only made after extensive discovery, a successful preliminary injunction, and a three plus week trial. (Dkt. 146-2, ¶ 3).  St. Luke's attorneys' fees significantly exceeded the amount of the offer at the time the offer was made.  (Dkt. 146-2, ¶ 3).   Mr. Houser asked whether there was room for negotiation; Losen said no, that it was a product of a "mathematical calculation" and that no additional amount would be considered until after the verdict.  (Dkt. 146-2, ¶ 3).

At trial, the jury rendered a verdict in favor of St. Luke's on all but one of its claims submitted to the jury.  (Dkt. 48, Exhibit B).  On the copyright infringement claim, the jury found St. Luke's has a copyright in the content of the Website and that Dr. Sanderson infringed the copyright, but that the copyright registrations were invalid. Accordingly, the jury did not reach the issue of damages.  On the DMCA, the jury found that Dr. Sanderson and Sanderson LLC violated the DMCA and St. Luke's was entitled to statutory damages in the amount of $20,000.[2]  The trial court entered judgment on the DMCA claim.  Both St. Luke's and Dr. Sanderson appealed the final judgment.  The trial court also entered a judgment in favor of St. Luke's in the amount of $584,755.76 for attorneys' fees and costs incurred on the trademark infringement and DMCA claims. (Dkt. 38, Exhibit 14, Dkt. 48, Composite Exhibit C.)  Both St. Luke's and Dr. Sanderson also appealed the attorneys' fee judgment.

On March 27, 2008, following entry of the March 12, 2008 Amended Final Judgment, Assurance sent another letter to Dr. Sanderson regarding coverage.  (Dkt. 38, Exhibit 19).   Assurance claimed that coverage was excluded for all claims except copyright infringement and DMCA.  Assurance stated there were no coverage issues for copyright infringement because judgment was entered in favor of Dr. Sanderson.  For the DMCA claim, Assurance stated, "[s]ince issues arise as to whether this award could be potentially covered, Assurance has decided that it will attempt to pay/satisfy the amount awarded in return for Plaintiff's release of this claim."   Although Defendants made the same representation in a subsequent letter (Dkt. 48, Exhibit A), Defendants have never

---

[2] The jury ruled in favor of St. Luke's on the other claims submitted to the jury, but those claims are not at issue in this litigation.

paid the judgment on the DMCA claim.  (Dkt. 48, ¶ 15).  Further, pursuant to the supplementary payments provisions of the policy, the Defendants have not paid any of the interest that continues to accrue on the judgments against Sanderson.

In February 2008, during the pendency of the appeal, St. Luke's filed a revised copyright registration (the "Third Registration') and initiated a second, one-count copyright infringement lawsuit against Dr. Sanderson and Sanderson LLC.  (Case No. 8:08-cv-00416, United States District Court, Middle District of Florida. hereafter referred to as "St. Luke's II").  The jury's verdict in St. Luke's I operated as res judicata regarding the validity of St. Luke's copyright and Dr. Sanderson and Sanderson LLC's infringement, so the only issues for determination in St. Luke's II was the validity of the Third Registration and the damages. *See Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 892 (11th Cir. 2013) (doctrine of res judicata prevents parties from relitigating claims previously decided by a final adjudication on the merits).  After St. Luke's II was filed, Assurance sent another reservation of rights letter, acknowledging that St. Luke's II was a one-count complaint for copyright infringement, discussing coverage and exclusions under the policy and raising potential coverage defenses.  (Dkt. 38, Exhibit 20).  In the new reservation of rights letter, Assurance expressly reserved the right to recover attorneys' fees from Dr. Sanderson.

Defendants did not pay any portion of the amended final judgment or the attorneys' fees judgment from St. Luke's I, and did not bond any portion of the amended final judgment on appeal.  (Dkt. 48, ¶ 8).  The Eleventh Circuit affirmed the judgment based on the jury verdict and affirmed the award of attorneys' fees in favor of St. Luke's.

(Dkt. 38, Exhibit 12, p. 49; Dkt. 38, Exhibit 15).  The Eleventh Circuit did not rule on St. Luke's separate appeal of the attorneys' fee award in favor of Dr. Sanderson prior to the settlement discussed below.  (Dkt. 47, Exhibit B).

After entry of the judgments, Dr. Sanderson was very concerned about how Defendants were handling his defense.  (Dkt. 115, ¶7).  Defendants had not paid the DMCA judgment that they had agreed to pay and refused to post a supersedeas bond pending appeal.  (Dkt. 48, ¶8, 15).  Neither Dr. Sanderson nor Sanderson LLC could pay the judgment, and he was very concerned about his potential exposure on the copyright claim in St. Luke's II, given the jury verdict, affirmed on appeal, that St. Luke's has a valid copyright and that Dr. Sanderson and Sanderson LLC violated the copyright.  (Dkt. 115, ¶ 9).  If the Third Registration was valid, the only jury issue was damages, and St. Luke's sought $2.8 million in damages and $50,000 in royalties on the copyright claim in the first trial.  (Dkt. 48, ¶ 10).  Accordingly, Dr. Sanderson retained Alberto Gomez as bankruptcy counsel and Michael Rywant as insurance coverage counsel to advise him of his options.  (Dkt. 115, ¶ 9)

After St. Luke's confirmed that Defendants would not pay, or bond during appeal, any part of the judgment, Mr. Houser authorized collection action against Dr. Sanderson and Sanderson LLC.  (Dkt. 146-2, ¶ 8).  Faced with judgments and defending St. Luke's II, Dr. Sanderson placed Sanderson LLC into a Chapter 11 bankruptcy and attempted to obtain an injunction from the bankruptcy court protecting Dr. Sanderson from St. Luke's executing on its judgment.  (Dkt. 115, ¶ 10).  After the bankruptcy court denied Sanderson LLC's motion for preliminary injunction, Dr. Sanderson requested mediation

in a last ditch effort to avoid personal bankruptcy and execution on his personal assets. (Dkt. 115, ¶ 10).   Prior to the mediation, Dr. Sanderson's counsel repeatedly advised Defendants that it was important to reach a resolution with St. Luke's because Dr. Sanderson was on the brink of personal bankruptcy.

Since the copyright claim was a specifically covered claim under the Insurance Policies (Insurance Policies, Section V, paragraph 14(g)), Dr. Sanderson requested Defendants' attendance at the mediation.  (Dkt. 48, ¶ 14).  Although Defendants' internal communications show they were reluctant to attend mediation, Defendants agreed to attend but sent a local adjuster from Orlando rather than the Chicago adjuster handling the claim.  (Dkt 115, Ex. A).  At mediation, on June 3, 2009, Defendants offered only a small amount to settle St. Luke's claims.  (Dkt. 115, ¶ 12).  Defendants did not make a good faith effort to resolve St. Luke's claims at mediation.  They arrived two hours late for mediation, took more than two hours to make their first offer, and the only offer they made was not even enough to cover the DMCA claim. (Dkt. 146-2, ¶ 16, 17, 19).  St. Luke's was very angry following the mediation, and was prepared to begin aggressive collection efforts against Dr. Sanderson.  (Dkt. 146-2, ¶ 19).

Following mediation, Dr. Sanderson no longer trusted that his attorneys appointed by Defendants were protecting his interest.   Instead, they seemed to be protecting Defendants' interests, to his detriment.  (Dkt. 115, ¶ 13).  Sanderson's frustration arose from not only the failed mediation but was a culmination of egregious claims handling and misinformation from the Defendants.   Accordingly, on August 24, 2009, Dr. Sanderson rejected Defendants' defense and discharged the attorneys appointed for him

and Sanderson LLC by Defendants.  (Dkt. 115, ¶ 14).

In November 2009, St. Luke's, Dr. James P. Gills, Dr. Sanderson and Sanderson LLC entered into a Joint Stipulation and Agreement.  (Dkt. 38, Exhibit 22).  In the Joint Stipulation, the parties jointly agreed to settle all of St. Luke's claims against Dr. Sanderson and Sanderson LLC, specifically including all claims raised in St. Luke's I and St. Luke's II, in exchange for, among other things, the entry of a judgment against Sanderson and Sanderson LLC for $2,400,000.  Also, in the agreement, Dr. Sanderson and Sanderson LLC agreed to pay $300,000 in monthly installments to St. Luke's.  The District Court in St. Luke's I subsequently vacated all prior final judgments and entered a third amended final judgment in the amount of $2,400,000.  (Dkt. 48, Exhibit D).

## MEMORANDUM OF LAW

### I.  THE COPYRIGHT INFRINGEMENT AND DMCA CLAIMS ARE COVERED BY THE INSURANCE POLICIES.

As discussed above, the Eleventh Circuit ruled in this case that the copyright infringement and DMCA claims are covered by the Insurance Policies.  The Court specifically ruled that "[a]fter applying ordinary rules of construction to the policies at issue in this case, we hold that the relevant provisions are unambiguous *and cover appellants' claims.*"  *St. Luke's Cataract & Laser Institute, P.A.*, 506 Fed. Appx. At 975. (emphasis added).

The Eleventh Circuit's finding of coverage is now the law of the case.  Under the law of the case doctrine, both the district court and the court of appeals generally are bound by findings of fact and conclusions of law made by the court of appeals in a prior appeal of the same case.  *Wheeler v. Pleasant Grove*, 746 F.2d 1437, 1441 (11th Cir.

1984).  This doctrine "comprehends things *decided by necessary implication* as well as those decided explicitly"  *Id.*  (internal citations omitted, emphasis in original).  The purpose of the doctrine is to bring an end to litigation, protect against the agitation of settled issues and assure obedience of lower courts to the decisions of the appellate court.  *Id.* (internal citations omitted).  The Eleventh Circuit has ruled that the copyright infringement and DMCA claims are covered under the Insurance Policies and that decision is binding.

## II. DEFENDANTS FAILED TO PROVIDE ADEQUATE COVERAGE FOR THE DMCA AND COPYRIGHT INFRINGEMENT CLAIMS.

Defendants first moved for summary judgment in October 2010.  (Dkt. 38).  At that time, Defendants argued that the Insurance Policies excluded coverage for the copyright infringement and DMCA claims.  On appeal, the Eleventh Circuit ruled that the copyright infringement and DMCA claims are covered under the Insurance Policies.  *St. Luke's Cataract & Laser Institute, P.A.*, 506 Fed. Appx. At 975.  Defendants now argue that, although these are covered claims, they are not obligated to pay the claims because Dr. Sanderson accepted Defendants' defense, and thus had an obligation to allow Defendants to control the defense and cooperate with Defendants.  Defendants are incorrect for the following reasons: (1) Dr. Sanderson had an absolute right to reject Defendants' defense; (2) Dr. Sanderson had a right to reject the defense because of a material change to the terms of the defense; (3) Dr. Sanderson had a right to reject the defense because it was inadequate; (4) Defendants did not exercise diligence and good faith in securing Dr. Sanderson's cooperation; and (5) Defendants have not been

prejudiced as a result of any alleged breach of the duty to cooperate.

## A. Dr. Sanderson had an absolute right to reject Defendants' conditional defense.

In Florida, when an insurer provides a defense to its insured and does not reserve its right to later deny coverage for the claim, the insurer is entitled to control the defense and the insured must cooperate with the insurer. *See United Nat. Ins. Co. v. Jacobs*, 754 F.Supp.865 (M.D. Fla. 1990).  However, if an insurer defends under a reservation of rights, it is the same as if the insurer refused to provide a defense at all. *See Nationwide Mut. Fire Ins. Co. v. Beville*, 825 So. 2d 999, 1003 (Fla. 4th DCA 2002) (when an insurer either refuses to defend or makes a reservation of rights, it violates its duty to unconditionally defend its insured and thereby transfers to the insured the power to defend).  Thereafter, the insured may elect to reject the conditional defense and hire its own attorneys to control the defense. *Aguero v. First Am. Ins. Co.*, 927 So. 2d 894, 898 (Fla. 3d DCA 2005).  Under Florida law, an insured has an absolute right to reject an insurer's conditional defense at any time.

Defendants cite *Taylor v. Safeco Ins. Co.*, 361 So. 2d 743 (Fla. 1st DCA 1978) for the proposition that an insurer defending under a reservation of rights retains the right to control the defense; this case also establishes, however, the insured's right to reject the conditional defense.  *Taylor* provides that an insured is "not obliged to surrender control of his personal defense to an insurer which disclaimed responsibility for any judgment within policy limits that might result from the litigation." *Id.* at 745.  Instead, the insured has a right to reject the conditional defense and provide its own defense without affecting the insurer's ultimate liability for the judgment. *Id.* at 746.  As in the instant case, the

11

insured in *Taylor* initially accepted the insurer's defense and allowed it to assume control. However, the insured later changed his mind and rejected the insurer's offer to continue providing a conditional defense. *Id.* at 744.   An insured is "always free to reject a defense under a reservation of rights." *Nationwide Mut. Fire Ins. v. Keen*, 658, So. 2d 1101, 1103 (Fla. 4th DCA 1995).

Indeed, the majority of the cases relied on by Defendants discussing defenses under a reservation of rights expressly state that the insured has a right to reject such a conditional defense. *Zurich American Ins. Co. v. Frankel Enterprises, Inc.*, 509 F. Supp. 2d 1303, 1310 (S.D. Fla. 2007) (insurer may be bound by a settlement where it defends under a reservation of rights and insured rejects defense); *Aguero v. First American Ins. Co.,* 927 So. 2d 894, 898 (Fla. 3d DCA 2005) (insured may reject a defense under a reservation of rights and retain its own attorneys without jeopardizing right to seek indemnification from insurer); *Travelers Indem. Co. of Illinois v. Royal Oak Enterprises, Inc.*, 344 F. Supp. 2d 1358, 1370 (M.D. Fla. 2004) (same); *Cont'l Cas. Co. v. City of Jacksonville*, 283 Fed. Appx. 686, 690 (11th Cir. 2008) (same).   Defendants' cited cases hold only that an insured, after initially accepting the insurer's conditional defense, cannot settle the case *without first formally rejecting the conditional defense.*

In the instant case, Dr. Sanderson properly rejected Defendants' defense.   Since Defendants never advised Dr. Sanderson that he had a right to mutually agreeable counsel, he discharged Larson & Larson, who had been defending the St. Luke's litigation for him for over a year, so that Chicago counsel appointed by Defendants could take over his defense.   However, Dr. Sanderson became very dissatisfied with the defense

following entry of the final judgment. Defendants refused to pay any portion of the judgment, refused to bond the judgment to protect Dr. Sanderson pending appeal and made no meaningful attempt to settle St. Luke's DMCA claim and the significant copyright infringement claim, despite the jury's finding of infringement in St. Luke's I. After Defendants failed to make any meaningful settlement offers at the June 2009 mediation, and St. Luke's threatened execution on Dr. Sanderson's personal assets, Dr. Sanderson was very concerned that his counsel was protecting the interests of Defendants, to his detriment. Accordingly, in August 2009, Dr. Sanderson's coverage counsel sent a letter to counsel appointed by Defendants, expressly discharging counsel and rejecting the defense. (Dkt. 99, Exhibit 10).

Although Defendants attempt to frame this as an eleventh hour rejection, there would have still been significant litigation if Dr. Sanderson and St. Luke's had not settled at that time. In November 2009, Dr. Sanderson and St. Luke's entered into the joint stipulation that resolved St. Luke's claims against Dr. Sanderson. St. Luke's II was in its infancy, and the parties would have still engaged in discovery, motion practice and ultimately trial. Thus, it was only an eleventh hour settlement because the settlement finally resolved the issues between Dr. Sanderson and St. Luke's. The settlement amount was substantially lower than the $2,800,000 damages figure for copyright infringement advanced by St. Luke's expert witness in St. Luke's I, and those amounts did not include more than $600,000 already awarded to St. Luke's in the first trial and affirmed on appeal. Accordingly, Dr. Sanderson's settlement with St. Luke's did not violate his duty to cooperate with Defendants because he rejected Defendants' defense.

**B. Dr. Sanderson had a right to reject Defendants' defense because of Defendants' material change to the terms of the defense.**

Even if an insured did not have an absolute right to reject a conditional defense at any time, Florida courts have recognized several additional circumstances allowing an insured to reject an insurer's conditional defense after initially accepting it.  The insured is entitled to reject a conditional defense if the insurer changes the terms of the defense in a material way.  *See Mid-Continent Cas. Co. v. Am. Pride Bldg. Co.,* 601 F. 3d 1143, 1150 (11th Cir. 2010).

In *Mid-Continent*, the district court recognized that an insured's acceptance of a conditional defense is not irrevocable, and the insured has the right to reject a defense if that defense changes in a material way.  *Id.*  As the District Court stated:

> [i]t defies logic to conclude that an insurer can change the terms of a defense agreement but that an insured has no power to reject those changes if it chooses.  The Court therefore finds that an insured may reject a conditional defense after the initial offering if the insurer changes the terms of the conditional defense in a material way.

Memorandum and Order, February 3, 2009, Mid-Continent Casualty Co. v. Am. Pride Bldg. Co., United States District Court, Middle District of Florida, Fort Myers Division, Case No. 2:07-cv0258.  [Dkt. 146-1].

The Eleventh Circuit, in recognizing this appropriate standard, further held that an insurer filing a declaratory judgment action against its insured and informing the insured that it intended to seek attorneys' fees and costs, may constitute a material change to the terms of the defense which justified the insured's rejection of the defense.  *Mid-Content,* 601 F. 2d at 1150.  The Eleventh Circuit further recognized that, "[o]f course, if [insured] properly rejected [insurer's] defense, it was free to enter into a settlement." *Id.*

14

In the instant case Defendants materially changed the terms and conditions of their defense of Dr. Sanderson.  Prior to trial, Defendants never advised Dr. Sanderson that they would not satisfy judgments for covered claims.  Instead, every reservation of rights letter that Defendants provided to Dr. Sanderson reiterated their obligation to "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies."  [Dkt. 38-18, 38-19, 38-21].

Following a jury verdict which found that Dr. Sanderson infringed St. Luke's copyright and entry of a final judgment that, among other things, awarded St. Luke's $20,000 on its DMCA claim, Defendants issued a reservation of rights letter expressly stating that they would satisfy the DMCA claim.  Defendants never satisfied the DMCA judgment.  Defendants never paid the interest owed under the supplementary payments provisions.  Defendants refused to post a bond to protect Dr. Sanderson from St. Luke's collection efforts.  St. Luke's filed a new lawsuit for copyright infringement eliminating the defenses that Dr. Sanderson raised in the initial lawsuit.  Defendants never made a good faith effort to resolve St. Luke's II.  Defendants knew Sanderson LLC filed for Chapter 11 bankruptcy.  Defendants were repeatedly advised that Dr. Sanderson was on the verge of financial collapse.

Despite this knowledge, Defendants did not pay the DMCA judgment and did not attempt to resolve the copyright infringement claim.  Moreover, unlike the insurer in *Mid-Continent*, Defendants did not initiate an action to resolve the coverage issues.  See *Robinson v. State Farm Fire and Cas. Co.*, 583 So. 2d 1063 (Fla.5th DCA 1991).

15

Defendants' refusal to protect their insured is a material change to the terms of the defense.  Dr. Sanderson was justifiably concerned about allowing Defendants to control his defense going forward.  Defendants acknowledged that the DMCA judgment was likely covered and that they would pay the DMCA judgment, but never attempted to do so.  Further, Defendants refused to pay any portion of the attorney fee judgment of $584,755.56, which was in part based on the DMCA judgment.  See *Assuarance Company of America v. Lucas Waterproofing Co., Inc.*, 2008 WL 1927365 (S.D. Fla. 2008) (discussed below).  Sanderson rejected Defendants' defense.  Thereafter, he was free to settle his claims with St. Luke's.  *Mid-Content,* 601 F. 2d at 1150.  See also *Allstate v. Levesque, et al,* United States District Court, Middle District of Florida, Tampa Division, Case No. 8:08-cv-002253-EAJ (Doc. 204). Contrary to Defendants' defense, they did not have the right to control the defense after Dr. Sanderson rejected the conditional defense.  Accordingly, Plaintiffs are entitled to summary judgment on the issue of coverage.

### C.  Dr. Sanderson had a right to reject Defendants' inadequate defense.

An insured may also reject an insurer's defense and settle the case if the insurer breaches its duty to defend the insured.  *Kopelowitz v.Home Ins. Co.*, 977 F.Supp. 1179, 1186 (S.D. Fla. 1997) (citations omitted).  An insurer must provide an adequate defense to fulfill its duty to defend.  *See Carousel Concessions, Inc. v. Fla. Ins. Guar. Ass'n*, 483 So. 2d 513, 517 (Fla. 3d DCA 1986).  A defense may be inadequate if the insurer hires an attorney whose actions prejudice the insured's defense.  *See Travelers Indem. Co. of Ill. v. Royal Oak Enter., Inc.*, 344 F. Supp. 2d 1358, 1369 (M.D. Fla. 2004).  An insured can

also establish a valid claim for breach of the duty to defend based on an insurer's wrongful refusal to settle. *Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co.*, 331 F. Appx. 640, 647 (11th Cir. 2009).

Defendants failed to pay any portion of the judgment against Dr. Sanderson, even after committing to pay the DMCA judgment. They failed to post a bond to protect his interests pending appeal. After the jury made an express finding that Dr. Sanderson breached St. Luke's copyright, Defendants refused to participate in meaningful settlement discussions. These actions constitute a breach of the duty to defend. In Florida, an insurer not only has a duty to defend its insured, but also a duty to adequately defend. *Aaron v. Allstate Ins. Co.*, 559 So. 2d 275, 277 (Fla. 4th DCA 1990). This duty is especially important when an insurer is defending under a reservation of rights, since the insurer has claimed that it may not be liable for any portion of the claim.

The Florida Supreme Court explained how an insurer must satisfy its duty to defend:

> An insurer, in handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business. For when the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement, then the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured. This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery would do.

*Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980).

Although *Boston Old Colony* was decided in the bad faith context, it is equally applicable in a breach of contract case because, when an insurer fails to provide an adequate defense, it breaches its contractual duty and authorizes the insured to assume control of the defense.  *See Carousel Concessions, Inc. v. Florida Ins. Guaranty Assoc.*, 483 So. 2d 513, 517 (Fla. 3d DCA 1986); *MCO Environmental, Inc. v. Agricultural Excess & Surplus Ins. Co.*, 689 So. 2d 1114, 1116 (Fla. 3d DCA 1997) (if insurer breaches duty to defend, insured can take control of the case, settle it, and sue for damages incurred in settling the action).  Accordingly, Dr. Sanderson had a right to control his own defense and settle St. Luke's claims against him.

### D.  Defendants did not suffer prejudice, and did not exercise due diligence in trying to bring about Dr. Sanderson's cooperation.

Even assuming Defendant proved Dr. Sanderson did not properly reject the defense and had a duty to cooperate, Defendants did not suffer prejudice as a result of Dr. Sanderson's rejection of the defense, and were not diligent in trying to bring about Dr. Sanderson's cooperation.  To be relieved of its duty under the cooperation clause, an insurer must show that: "(1) the insured failed to cooperate; (2) the lack of cooperation was material; (3) the insurer suffered substantial prejudice as a result of the insured's failure to cooperate; and (4) the insurer exercised due diligence and good faith in trying to bring about the insured's cooperation."  *Cont'l Cas. Co.,* 550 F.Supp.2d at 1339 (citation omitted).  Defendants cannot establish that they suffered substantial prejudice, or that they exercised due diligence in trying to bring about Dr. Sanderson's cooperation.

An insurer is only excused from its obligations due to an insured's breach of the

cooperation clause if it can establish that the "lack of cooperation [was] … material and the insurance company … was *substantially prejudiced* in the particular case by failure to cooperate." *Ramos v. Northwestern Mut. Ins. Co.*, 336 So. 2d 71, 75 (Fla. 1976) (emphasis added). Defendants cannot establish substantial prejudice. Defendants are free to assert their position that there is no coverage (as they have done throughout this litigation), and if they are correct, they will have no liability for Joint Stipulation. If the Court finds that coverage does exist, Defendants will only be liable for the policy limits *unless* they acted in bad faith in defending Dr. Sanderson. If Defendants acted in bad faith in their defense of Dr. Sanderson (which is not at issue in this litigation), then they breached their insurance contract with Dr. Sanderson and cannot complain about Dr. Sanderson's alleged failure to cooperate.

Moreover, Defendants were not diligent in trying to bring about Dr. Sanderson's cooperation. Indeed, they knew that Dr. Sanderson was dissatisfied with their defense, that he had hired coverage counsel, that he had filed civil remedy notices with the Florida Department of Financial Services as a result of Defendants' mishandling of the defense, that St. Luke's was pursuing collection of its judgment, that Dr. Sanderson was forced to place Sanderson LLC in Chapter 11 bankruptcy and that he was on the verge of filing for personal bankruptcy as a result of St. Luke's judgment against him. (Dkt. 115, ¶ 15). More importantly, Defendants knew that St. Luke's was making settlement offers directly to Dr. Sanderson, through coverage counsel. (Dkt. 115, ¶16). Defendants made no attempt to secure Dr. Sanderson's cooperation. Instead, they sat back and protected their own interests, forcing Dr. Sanderson to protect himself. They should not be permitted to

abandon their insured and then deny coverage when the insured takes steps to protect himself.

### III.   DEFENDANTS HAD A DUTY TO PROVIDE AN ADEQUATE DEFENSE, WHICH INCLUDES A DUTY TO SETTLE.

Defendants breached their contractual duty to defend when they failed to reasonably settle the DMCA and copyright infringement claims.  Defendants argue that there can be no claim for failure to settle because the insurer has the right to control the defense.  However, as discussed above, an insurer defending under a reservation of rights has a duty to provide an adequate defense.   An adequate defense includes a duty to reasonably settle.  *Ernie Haire Ford, Inc.*, 331 Fed. Appx. at 647; *Carousel Concessions, Inc.*, 483 So. 2d at 517; *MCO Environmental, Inc.*, 689 So. 2d at 1116.   Thus, Defendants' refusal to reasonably settle the claims was a breach of their duty to defend, which gave Dr. Sanderson the right to take control of his own defense.

### IV.   DEFENDANTS HAD A DUTY TO PROVIDE MUTUALLY AGREEABLE COUNSEL.

As set forth in their initial reservation of rights letter [Dkt. 38, Ex. 18], the Defendant insurers raised coverage defenses, including whether Dr. Sanderson provided timely notice of the claim.  Throughout the litigation, this coverage defense was never withdrawn by the Defendant insurers.

Section 627.426(2), Florida Statute provides:

 (2) A liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless:

> (a) Within 30 days after the liability insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert a

coverage defense is given to the named insured […]

(b) Within 60 days of compliance with paragraph (a) or a receipt of a summons and complaint naming the insured as a Defendant, whichever is later, but in no case later than 30 days before trial, the insurer:

> 1. Gives written notice to the named insured by registered or certified mail of its refusal to defend;
> 2. Obtains from the insured a non-waiver agreement following full disclosure of the specific facts and policy provisions upon which the coverage defense is asserted and the duties, obligations and liabilities of the insured during and following the pendency the subject litigation;
> 3. **Retains independent counsel which is mutually agreeable to the parties**. […] [ *Emphasis added]*.

An insurer is obligated to strictly comply with Florida Statute 627.426.  A failure to strictly comply will result in an insurer being precluded from asserting its coverage defense.  *Country Manors Association, Inc. v. Master Antenna Systems, Inc*., 534 So.2d 1187, 1193 (Fla. 2d DCA 1989).  Once the carrier gives an insured notice of reservation of rights, the carrier must either get a "non-waiver agreement" with its insured or furnish mutually acceptable counsel to defend the insured against the claim.  See *Nationwide Mutual Fire Ins. Co. v. Beville*, 825 So.2d 99, 1003, (Fla. 4th DCA 2002).  There was no "non-waiver agreement" secured from Dr. Sanderson or his LLC.  In this case, it is undisputed that the Defendant insurers never gave Dr. Sanderson notice of his right to mutually agreeable counsel.  The Defendants breached the policies by failing to retain mutually agreeable counsel to defend Dr. Sanderson and his LLC in the underlying action as required by the Claims Administration Statute, Florida Statute §27.426(b)(2)(B)(3).

The first reservation of rights letter dated October 24, 2006 specifically states: "Nothing in this letter shall be construed as a waiver of any policy defenses, which are or

may become available."    The second reservation of rights letter was then sent on May 2, 2007 which again stated "Nothing in this letter shall be construed as a waiver by Assurance of any policy defenses which are or may become available".  On March 27, 2008 a third reservation of rights letter was sent to Dr. Sanderson which again stated "Nothing in this letter should be construed as a waiver by Assurance under any other policy defenses which are or may become available".  Thereafter, the Defendant insurers sent a reservation of rights letter dated April 8, 2008 which supplemented the reservation of rights letters dated October 24, 2006 and May 2, 2007.  Again the Defendant insurers stated "Nothing in this letter shall be construed as a waiver by Assurance of any other policy defenses which are or may become available".

At no time was mutually agreeable defense counsel provided to Dr. Sanderson (despite the defendant insurers assertion of coverage defenses), under the provisions of Florida Statute 627.426.  Neither Dr. Sanderson nor his LLC were informed of their right to have mutually agreeable counsel, nor asked whether unilaterally appointed counsel was acceptable, and were not consulted in any way regarding the selection of counsel other than appointing counsel for them despite Dr. Sanderson's request that his prior counsel continue with the representation.  [Dr. Sanderson's declaration D.E. 115].

Florida Statute 627.426 requires insurers take certain actions before liability insurers are permitted to deny coverage based on particular coverage defenses.  As discussed in the report of Plaintiff's expert, Peter Knowe, the failure to give Dr. Sanderson notice of his right to mutually agreeable counsel deviated from insurance customary practice in communicating honestly and timely with the insured throughout

22

the claim process.   To satisfy its obligation to defend, an insurer must provide an adequate defense.   *Carrousel Concessions, Inc. v. Florida Insurance Guaranty Association,* 483 So.2d 513, 517 (Fla. 3d DCA 1986).   A defense may be inadequate if the insurer hires an attorney whose actions prejudice the insured's defense.   See *Travelers Indemnity Co. of Illinois v. Royal Oak Enterprises, Inc.,* 344 Fed. Supp. 2d 1358, 1369 (M.D. Fla. 2004).     An insured can also establish a valid claim for breach of a duty to defend based upon an insurers' inadequate defense and failure to settle.   *Ernie Ford Haire v. Universal Underwriters Ins. Co.*, 331 F. App'x 640, 647 (11th Cir. 2009); *Carrousel Concessions, Inc. v. Florida Insurance Guaranty Association,* 483 So.2d 513, 517 (Fla. 3d DCA 1986) ("If the insurer acts negligently in carrying out its duty to defend, its conduct constitutes a breach of contract, entitling the insured to recover all damages naturally flowing from the breach.").   See also *MCO Environmental Inc. v. Agricultural Excess and Surplus Ins. Co.*, 689 So.2d 1114, 1116 (Fla. 3d DCA 1997) ("If an insurer breaches a duty to defend, the insured can take control of the case, settle it, and sue for damages he incurred in settling the action).

This is consistent with well-settled Florida law that a prior material breach of contract by one party discharges the other party's obligations under the contract.   See *Seaboard Oil Co. v. Donovan* 99 Fla. 1296, 1305, 128 So. 821, 824 (Fla. 1930) ("A party is not entitled to enjoin the breach of a contract by another unless he himself has performed what the contract requires of him so far as possible"); *Nacooche Corp. v. Pickett*, 948 So.2d 26, 30 (Fla. 1st DCA 2006); *JNC Enterprises Ltd v. ICP 1, Inc*. 777 So.2d 1182, 1185 (Fla. 5th DCA); See also *Rose Printing Co. v. Haggerty*, 584 So.2d 606,

608 (Fla. 1st DCA 1991).

In addition, and perhaps more importantly, the Defendant insurers are alleging that Dr. Sanderson did not cooperate and breached a policy provision when it entered into a stipulated judgment.  However, a lack of compliance with Florida Statute 627.426(b)(2)(B)(3) prevents the insurer from raising the breach of cooperation clause. As the Defendant insurers failed to comply with the statute, Dr. Sanderson had the right to protect himself and enter into the consent judgment.  *American Empire Surplus Lines Ins. Co. v. Gold Coast Elevator*, 701 So.2d 904 (Fla. 4th DCA 1997) ("Conduct of liability insurer attempting to defend insurer under a reservation of rights without fulfilling its statutory duty to select mutually agreeable counsel is tantamount to a wrongful refusal to defend"); *Continental Ins. Co. v. City of Miami Beach*, 521 So.2d 232 (Fla. 3d DCA 1988) ("Finding that the insurer was not entitled to deny coverage where the insured was not informed of his right to mutually agreeable counsel").

The Defendant insurers' failure to advise of the right to mutually agreeable counsel is compounded by the unilateral imposition of counsel not selected by Dr. Sanderson.  Such conduct is the antithesis of mutual selection.  *American Empire*, 701 So. 2d at 906.

## V.     ST. LUKE'S DAMAGES FOR VIOLATION OF THE DMCA INCLUDE ATTORNEYS' FEES FOR THAT CLAIM.

Defendants coverage for the DMCA claim includes coverage for the attorneys' fee award associated with that claim.  This issue was discussed by the Southern District of Florida in *Assurance Co. of America v. Lucas Waterproofing Co.*, 581 F.Supp.2d 1201, 1213 (S.D. Fla. 2008).  As the *Lucas Waterproofing* court discussed, if an insurer is

entitled to defend against a covered claim without taking into account potential attorneys' fees and costs that may be awarded, the insurer creates a conflict whereby, in trying to minimize its own liability, it imposes potential costs on its insured. *Id.* If, in fulfilling its duty to defend, an insurer can decrease its own liability while simultaneously increasing the liability of its insured, the interests of the insurer and insured are no longer aligned. *Id.* Accordingly, attorneys' fees and costs that an insured becomes obligated to pay pursuant to a statutory provision that are attributable to an insurer's duty to defend constitute covered damages under an insurance policy.

Defendants argue that *Lucas Waterproofing* does not reflect Florida law, citing a concurring opinion in *Geico Gen. Ins. Co. v. Williams*, 111 So. 3d 240 (Fla. 4th DCA 2013). However, *Geico's* cite to *Lucas Waterproofing* is in a concurring opinion, is dicta and should be rejected. This Court should adopt the reasoning of *Lucas Waterproofing*, which accurately reflects that attorneys' fees can be a significant portion of the liability for an insured and, especially where the insurer controls the defense and refuses to settle covered claims, the insured should not be left exposed to attorneys' fees claims.

## VI.   DEFENDANTS HAD A DUTY TO POST A SUPERSEDEAS BOND TO PROTECT THEIR INSURED.

Defendants argue that they had no duty to post a supersedeas bond, and were only required to pay the premiums for the bond. However, in the instant case, the failure to post a bond was a breach of the duty to provide coverage. St. Luke's already had a judgment against Dr. Sanderson. Although Defendants said that they would pay at least the portion of the judgment related to the DMCA claim, they never tendered payment. Thus, their failure to post a bond to protect their insured left him exposed to collection

efforts by St. Luke's.  To meet their obligations to provide coverage to their insured, Defendants needed to either pay the covered portions of the judgment or bond the judgment.  By doing neither, they breached their contractual duty to provide coverage.

Respectfully submitted,

/s/ Lindsay Patrick Lopez
JOHN D. GOLDSMITH
Florida Bar No. 0444278
jgoldsmith@trenam.com
LINDSAY PATRICK LOPEZ
Florida Bar No. 0022839
llopez@trenam.com
TRENAM, KEMKER, et al.
P.O. Box 1102
Tampa, Florida 33601
Tel.: (813) 223-7474 / Fax: (813) 229-6553
Attorneys for St. Luke's

and

ANDREW F. RUSSO
Florida Bar No. 508594
arusso@rywantalvarez.com
Rywant, Alvarez, Jones, Russo
  & Guyton, P.A.
109 N. Brush Street, Suite 500
Tampa, FL 33604
Attorneys for Sanderson

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing Plaintiffs' Trial Brief has been electronically filed on July 2, 2014 with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing and copy to counsel for Defendants, Bradley S. Fischer, Esq., Lewis, Brisbois, Bisgaard & Smith, LLP, 200 Las Olas Circle, 200 SW 1st Avenue, Suite 910, Fort Lauderdale, FL 33301.

        /s/ Lindsay Patrick Lopez
                Attorney